UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RARE BREED TRIGGERS, LLC, a
Florida Limited Liability Company, and
KEVIN C. MAXWELL, an individual,

    Plaintiffs,

CASE NO.:

v.

MERRICK GARLAND, in his official capacity as Attorney General of the United States; U.S. DEPARTMENT OF JUSTICE; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; CRAIG SAIER, in his capacity as Special Agent in Charge of the Tampa Field Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives; and MARVIN RICHARDSON, in his official capacity as Acting Director, Bureau of Alcohol, Tobacco, Firearms, and Explosives,

    Defendants.

_____/

## KEVIN C. MAXWELL'S AFFIDAVIT

STATE OF FLORIDA

COUNTY OF ORANGE

    BEFORE ME, the undersigned authority, personally appeared KEVIN C. MAXWELL who, after being duly sworn, deposes and says:

*Exhibit "A"*

1. I am over the age of eighteen (18) years, and I have personal knowledge of the facts contained herein, and I am otherwise competent to testify to these matters.

2. I am a licensed attorney in good standing in the State of Florida and in the United States District Court for the Middle District of Florida, and my practice is located at 733 W. Colonial Drive, Orlando, Florida 32804.

3. I am also the sole owner and counsel for RARE BREED TRIGGERS, LLC, a Florida Limited Liability Company ("RBT"), which shares a mailing address with my law office of 733 W. Colonial Drive, Orlando, Florida 32804.

4. RBT sells a patented semiautomatic trigger referred to as the "FRT-15".

5. The drawing, diagrams, and videos showing the FRT-15's functions are on file with RBT.

6. The FRT-15 is a semiautomatic trigger, meaning that only one round is expelled by each function of the trigger.

7. The FRT-15 functions like other semi-automatic firearms following eight steps in operation: Firing, Unlocking, Extracting, Ejecting, Cocking, Feeding, Chambering, and Locking. With the bolt locked in the chamber, a round in the chamber, and safety off, the cycle of operation begins as a shooter pulls the trigger, the round fires. As the round passes the gas port most of that gas is vented through

the gas tube and begins the process of sending the bolt carrier to the rear. When that process starts the bolt unlocks, the brass is an extracted from the chamber and ejected from the firearm. Like all AR-15 firearms, as the bolt carrier moves to the rear it cocks the hammer. In the FRT-15's patented design, as the bolt carrier cocks the hammer, the cocking hammer also forces a reset on the trigger, which pushes the shooters finger forward. This FORCED RESET is what make the FRT-15 legal under the NFA, because it requires the shooter to pull or function the trigger again in order to fire another round. Simultaneously, as the trigger is forced into a reset position, a locking bar, which is part of the trigger assembly, pivots into position, mechanically locking the trigger forward, preventing the FRT-15 Trigger from functioning (being pulled) again until the cycle of operation is complete, with the bolt locking into the loaded chamber. As the buffer spring, behind the bolt carrier, pushes the bolt carrier forward, a new round is fed from the magazine. That new round is in forced into the chamber as the bolt closes and locks into place. Only after the bolt locks into place inside the chamber is the locking bar is disengaged which allows the shooter to pull the trigger again. Until the trigger is pulled again, the firearm will not and cannot fire. In fact, pulling the trigger to the rear with enough force to overcome the forced reset function will cause the firearm to cease operation.

8. Thus, while the FRT-15 allows for a more rapid subsequent firing of the next round by the firearm, it <u>does not</u> allow more than one round of ammunition to be expelled per function of the trigger.

9. Before the FRT-15 ever went to manufacturing, I submitted the prototype to legal counsel, Kevin P. McCann, Esq., seeking a legal opinion letter about the FRT-15's compliance with the federal law – specifically whether it fit the definition of a "machinegun".

10. Mr. McCann is personally known to me and has legal practice and is a former ATF Resident Agent in Charge, he retired from the ATF after 25 years.

11. It is my understanding from Defendant SAC (Craig Saier) he is well-aware of Mr. McCann's reputation and expertise.

12. On or about July 31, 2020, Mr. McCann provided a legal opinion letter on this subject ("McCann Opinion Letter"). A true and correct copy of the McCann Opinion Letter is attached to my Complaint and to my motions for injunctive relief.

13. Mr. McCann provided a full analysis of the function of the FRT-15 and he analyzed its function against the definition of a "machinegun" under federal law.

14. Mr. McCann concluded that the FRT-15 <u>does not</u> meet the definition of a "machinegun" under federal law.

15. The Plaintiffs further sought a second opinion on the FRT-15 prototype from International Firearms Specialist Academy ("IFSA") in Dallas, Texas.

16. On or about August 6, 2020, received an opinion from IFSA's Director, Daniel O'Kelly. Mr. O'Kelly is also a former ATF Senior Special Agent and the Chief Firearms Technology Instructor at the ATF National Academy, where he wrote and co-wrote the entire firearms technology course of study used to train Agents and Investigators on among other things, what is and is not a machinegun.

17. Mr. O'Kelly provided his detailed analysis of the FRT-15's function against the definition of a "machinegun" under federal law, and he also concluded that the FRT-15 <u>does not</u> meet the definition of a "machinegun" under federal law. ("IFSA Opinion Letter"). A true and correct copy of the IFSA Opinion Letter is attached is attached to my Complaint and to my motions for injunctive relief.

18. After the FRT-15 went into manufacturing, I sought two additional examinations and opinions from two additional national firearms experts to ensure that any development changed to aid in the manufacturing of the FRT-15 had not changed its function in any way that would cause it to fall under the definition of a "machinegun".

19. On or about February 24, 2021, the Plaintiffs received an opinion letter from Rick Vasquez, another former ATF Special Agent and Former Acting Chief of the Firearms Technology Branch. Where he served as the ATF's expert on all Gun Control Act and National Firearms Act identification and classifications. Firearms

Technology Branch is arm of the ATF which it is alluded to have conducted the examination upon which the Cease and Desist letter is based.

20. Mr. Vasquez again analyzed the functions of the FRT-15 against the definition of a "machinegun" under federal law and concluded that the manufactured version of the FRT-15 <u>does not</u> meet the definition of a "machinegun" ("Vasquez Opinion Letter). A true and correct copy of the Vasquez Opinion Letter is attached to my Complaint and to my motions for injunctive relief.

21. On or about May 4, 2021, we received an opinion letter from Firearms Training and Interstate Nexus Consulting, LLC ("FTINC") in Grand Rapids, Michigan, via the company's owner, Brian Luettke.

22. Mr. Luettke is another former ATF Special Agent, with 22 years with ATF, an instructor at the ATF's National Academy teaching the application of Gun Control Act and National Firearms Act identification and classifications and in his last position with ATF, was Chief of Advanced Firearms and Interstate Nexus Branch, a sub-branch of the Firearms and Ammunition Technology Branch. He provided the Plaintiffs with yet another opinion letter once again analyzing the functions of the manufactured version of the FRT-15 and comparing it against the definition of a "machinegun" under federal law.

23. Mr. Luettke also concluded that the manufactured version of the FRT-15 <u>does not</u> meet the definition of a "machinegun" ("FRINC Opinion Letter). A true

and correct copy of the FRINC Opinion Letter is attached to my Complaint and to my motions for injunctive relief.

24. I have personal knowledge that these four experts are well known to the Defendants not only because of their former employment as ATF special agents, but also because the DOJ and ATF presented them as experts in cases and criminal prosecutions on the subject of what does and does not constitute a "machinegun" under federal law.

25. I specifically sought out the opinion of qualified counsel and the other experts in good faith because I did not want myself or RBT to take any action that was in violation of the law.

26. In reliance upon the opinions of our legal counsel and the opinions of these well-qualified industry experts and former ATF agents, we proceeded to sell the FRT-15.

27. On or about July 26, 2021, the DOJ, acting thorough the ATF, contacted me requesting a meeting with SAC.

28. When that meeting took place the following day, SAC, with the attendance of his legal counsel, informed the Plaintiffs he had been directed by his chain of command at the ATF to issue the Plaintiffs a Cease and Desist Letter because the ATF had "examined" the FRT-15 and had determined it to be a "machinegun" under the definitions of the above-cited federal laws.

29. I requested to see this alleged "examination", however, SAC advised me that he did not have the examination and had never seen it.

30. SAC then hand delivered the Cease and Desist Letter to me. A true and correct copy of the ATF Letter is attached to my Complaint and to my motions for injunctive relief.

31. As I pointed out to SAC, the Cease and Desist Letter bases all of its directives on an this alleged "examination" which has never been provided, and it does not reveal the method of testing or examination applied by the ATF's Tampa Field Division in order to reach the conclusion that the FRT-15 is a machinegun.

32. It also provides no details as to its conclusion other than to say that the FRT-15 allows more than one round of ammunition to be expelled at a time.

33. Knowing that this was not true, I advised SAC that I completely disagreed with any conclusion which suggests the FRT-15 can shoot more than one round by a single function of the trigger.

34. I further informed SAC that this was not just my opinion because before the first FRT-15 was manufactured, the design was reviewed in detail by Retired Special Agent Kevin McCann, Esq., and former ATF Senior Special Agent, Program Manager and Chief Firearms Technology Instructor Daniel G. O'Kelly, specifically for the FRT-15 compliance with both the NFA and the Gun Control Act, and that both had rendered the opinion that the FRT-15 is <u>not</u> a machinegun.

35. At that time SAC confirmed to me that he is fully-aware of who Mr. McCann is and of his qualifications.

36. I further advised SAC that I was deeply concerned about this conclusion because the ATF's Firearms Technology Branch has previously approved a forced (positive) reset trigger similar to the FRT-15 (called the 3MR trigger) in October 2013, and to the best of my knowledge and belief, the 3MR trigger design remains approved and available on the open market. A true and correct copy of the October 31, 2013 approval letter for the 3MR trigger is attached to my Complaint and to my motions for injunctive relief.

37. Despite this, SAC informed me that RBT had to immediately cease manufacturing and transferring all FRT-15 units, and within five (5) days we had to make arrangements with the ATF to develop a plan for reacquiring all the FRT-15 units that have already been sold.

38. SAC further advised me that if their demands are not met, they intend to criminally prosecute me, seize our assets, and assess and collect taxes.

39. If this occurs, both myself and RBT, as well as RBT's customers, will be irreparably harmed.

40. Not only will RBT's customers lose the monetary value of their possessions (through forced surrender, confiscation, or destruction) and their ability

to use them, but all future customers of RBT will be deprived of the ability to purchase and use the FRT-15.

41. Such customers of RBT will then inevitably seek chargebacks against RBT when such property is seized which will cause irreparable financial harm to the company.

42. Further, the seizing of assets of the Plaintiffs will cause RBT's business to collapse and will cut off my personal income and seriously effect my ability to provide for himself and my family.

43. This will force RBT to close its business and to disclose its confidential customer lists or risk felony prosecution.

44. Further, the ATF's actions will place me, as a practicing attorney, at risk of suspension of my legal license due to any criminal prosecution wrongfully brought by the Defendants.

45. Because RBT and my legal practice share a common mailing address, any seizure of property by the Defendants, such as files or computers, creates an inherent and unacceptable risk of the wrongful disclosure of privileged and protected attorney/client communications, as well as protected attorney work-product and other protected intellectual property such as copyrighted documents.

46. I have requested the SAC withdraw the Cease and Desist notice and provide me the unredacted examination mentioned in The Letter. He has declined.

Upon his declination I advised him of my intent to file a Complaint for Declaratory and Injunctive Relief, a Motion for Preliminary Injunction, and a Motion for a Temporary Restraining Order. I have provided the SAC and his legal counsel, Amy Freyermuth, Esquire, with all pleadings and exhibit documents via email as Notice of this action

**FURTHER AFFIANT SAYETH NAUGHT.**

Kevin C. Maxwell, Affiant

### Notary

SWORN TO AND SUBSCRIBED before me this 2nd day of August _____, 2021 by Kevin C. Maxwell, who is personally known to me, or who has produced _____ _____ as identification, and who did take an oath.

Signed _____

ANA V HERNANDEZ
Commission # GG 235494
Expires November 5, 2022
Bonded Thru Budget Notary Services

My Commission Expires:

(Seal)