

# The Law Office of
# Kevin C. Maxwell

| | |
|---|---|
| **ATTORNEY** | **LEGAL ASSISTANT** |
| **KEVIN C. MAXWELL** | **LINNETTE M. CONDE** |
| KEVINCMAXWELL@GMAIL.COM | KEVINMAXWELLPL@GMAIL.COM |

August 2, 2021

Craig.saier@atf.gov
Mr. Craig Saier
Special Agent in Charge
Tampa Field Division
U. S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives
400 N. Tampa Street, suite 2100
Tampa, Florida 33602

Re: In response to Cease and Desist- Rare Breed Triggers, FRT-15

Dear Special Agent in Charge Saier

     I represent Rare Breed Triggers, LLC ("RBT").  I write in response to your letter dated July 26, 2021 ("The Letter"), which was provided to me by hand delivery on July 27, 2021 by you and Amy Freyermuth, Esquire.  Your letter directs RBT to "cease and desist all manufacture and transfer of Rare Breed Trigger FRT-15" and to "contact ATF within 5 days of receipt of this letter to develop a plan for addressing those machineguns already distributed."

     The Letter bases its directives on an alleged "examination" finding that the FRT-15 has been properly classified as a machinegun as defined in the National Firearms Act (NFA).  While The Letter refers to such "examination" in its first paragraph, I say "alleged" above because you stated during our July 27, 2021 conversation that you have not seen any examination done by the ATF concluding that the FRT-15 is a machinegun.  Neither had Mrs. Freyermuth seen any such examination and neither of you had a copy you could provide.

     While I thank you for your frankness, courtesy, and professionalism during our meeting, I must dispute The Letter's claims in its entirety and demand strict proof of same, including an unredacted copy of what I expect is a Report of Technical Examination from the examiner within the Firearms Technology Branch.  In the absence of that, I must demand an unredacted copy of whatever other "examination" led to the issuance of The Letter.

     RBT disagrees with any conclusion which suggests the FRT-15 **can shoot more than one round by a single function of the trigger**. This is not just my opinion. Before the first FRT-15 was manufactured, the design was reviewed in detail by Retired Special Agent Kevin McCann, Esquire and former ATF Senior Special Agent, Program Manager and Chief Firearms Technology

---

**733 WEST COLONIAL DRIVE, ORLANDO, FLORIDA 32804**
**TELEPHONE: (407) 480-2179 ♦ FACSIMILE: (407) 849-2951**
www.maxlaworlando.com
www.facebook.com/maxlaworlando

Instructor Daniel G. O'Kelly. The conclusion of that review determined the FRT-15 is not a machinegun.

The Letter does not reveal the method of testing or examination applied by the Tampa Field Division in concluding that the FRT-15 is a machinegun. I understand you have never seen the report upon which The Letter you wrote is based, however, this omission is quite a concern to me.

The Letter's failure to identify a legal standard or address apparent conflicts with past rulings or approvals causes great concern about its legality. As I am sure you are already aware, the Administrative Procedure Act (Act) sets forth the procedures by which the ATF is accountable to the public and its actions are subject to review by the courts. The Act requires the ATF to engage in reasonable decision making and directs those actions be set aside if they are arbitrary or capricious. In addition, the Supreme Court of the United States has held that where an agency's prior policy, such as here with a prior similar design approval, has engendered serious reliance interests it is arbitrary or capricious to ignore such matters when attempting to change such a policy. As a result, to change policy the ATF must display awareness it is changing position and provide a reasonable explanation showing the agency believes the new policy to be better than the old policy. Since your stated position is based on your application of the definition of a machinegun under section 5845(b)(6) of 26 United States Code to the FRT-15, the ATF must present how and why it has the authority to change its prior interpretations of the NFA. I sincerely hope the ATF did not base The Letter on a video depicting a semiautomatic rifle firing while equipped with the FRT-15. We both know that a firearm's cyclical rate is not relevant, let alone dispositive, as to whether such firearm is a machinegun. Rather, whether a firearm is a machine gun is solely dependent on 26 USC 5845(b). The Letter fails to comply with these requirements or to reflect your determination can be reconciled with the prior decisions reaching conflicting results.

RBT has the highest regard for the law and the cornerstone of such law is basic concept of due process, which includes notice and the opportunity to be heard. The Letter demands that RBT cease operation without advising it of how its product allegedly violates applicable law. Moreover, The Letter is signed by you, in your capacity as a law enforcement officer and an officer of the court, without you having personal knowledge, or any knowledge, of the alleged factual underpinning of The Letter. Respectfully, how can you have signed The Letter in good faith under these circumstances? I write not to be confrontational, but The Letter seems like a charging affidavit written by a police officer who did not witness the events and who does not know who did. No court would rely on such an affidavit – and I very much expect the same result here.

Why would RBT take the penultimate step of ceasing its operations when not even you have a factual basis for The Letter's conclusions – let alone RBT. Tremendous time, resources, and money have been invested into ensuring RBT is compliant with the law, creating and sustaining its operations, and its overall success in the marketplace. RBT cannot reasonably meet the ATF's demand under these circumstances.

As you should know, the ATF's Firearms Technology Branch has approved a forced (positive) reset trigger in the past and that design remains approved to the best of my knowledge

and belief. (See Oct 31, 2013 letter of approval of the 3MR trigger.) The FRT-15 is a forced reset trigger as is the 3MR trigger. Neither converts a semiautomatic firearm into a machinegun.

The Letter improperly threatens criminal prosecution without proper notice. This makes the legality of your determination even more unreasonable. The Supreme Court has ruled that due process bars enforcement of criminal statutes where an agency improperly changes course with respect to conduct it deems unlawful. This is because an improper regulatory change or reinterpretation makes it impossible for the average person to know what is illegal. The Letter is just such a change because as pointed out above, Technical Branch has previously concluded that a trigger with a force or positive reset similar to the FRT-15 trigger assembly is not a part or combination of parts that will convert a semiautomatic firearm into a machinegun. Further, the ATF has never announced any change in position, nor promulgated any publicly available notice of its reinterpretation of their prior approvals. In short, the ATF is unable to legitimately do or what it threatens to do in The Letter.

Fair and proper notice would also extend to the thousands of Americans who purchased an FRT-15 in reliance on the ATF's past interpretation of the NFA. In recent case of Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives, Justice Gorsuch explained how ATF's "bureaucratic pirouetting" on the interpretation of a different federal gun statute forced "ordinary citizens . . . to guess" about how best "to conform their conduct" to the law. Justice Gorsuch's revelation of the harms that result when ATF reverses course underscores the need for ATF to carefully consider the effect of the Letter both on RBT and on thousands of law-abiding American citizens, and to ensure that any policy changes follow proper procedures.

The Letter also states, "The NFA levies a $200 tax on each firearm made and an additional $200 tax on each firearm transferred." Your letter seems to imply RBT could pay the taxes on the FRT-15 and continue production as a class 3 item, was that your intent? Because while you have suggested in The Letter, RBT could be required to pay the $200 tax to manufacture and the $200 tax to transfer each FRT-15, you failed to indicate how that would be possible. Instead, The Letter demands RBT to develop a plan for addressing those machineguns already distributed when no such machineguns exist.

Further, as alluded to above, RBT did its due diligence before manufacture of the FRT-15 began. Attached please find an opinion letters of Kevin McCann, Esquire, Daniel G. O'Kelly, Rick Vasquez and Brian Luettke. All former ATF experts. RBT seems to be the only one here who has done its due diligence prior to acting.

RBT must defend its interests from what certainly appears to be an overreach. Please note that I do not intend here to besmirch you. I understand you have superiors. Please also understand, however, that the orders you are asked to follow relating to RBT must have basis in law and fact.

I stand ready to receive the information demanded above. Until then, RBT must respectfully decline The Letter's demands. Make no mistake, RBT will fully cooperate with any reasonable ATF investigation. However, it cannot simply acquiesce to the destruction of its

business based upon ATF fiat that finds no support in its prior rulings or applicable law, rule, or regulation.

I have left you two voice mail messages to see if you will withdraw the Cease and Desist. When I did reach you, I spoke to your legal counsel Amy Freyermuth. I advised her of my request and my intent to seek Declaratory and Injunctive Relief, a Preliminary Injunction and a Temporary Restraining Order.

This correspondence is not and should not be construed as a full treatment of the issues raised in The Letter. RBT reserves the right to re-evaluate its position after receipt and review of any additional documents the ATF elects to provide.

Sincerely,

/s/ Kevin Maxwell_____
Kevin C. Maxwell, Esquire